## NOSTRAND *v.* KNIGHT *et al.*

(*Supreme Court, General Term, Second Department.* February 11, 1889.)

VENDOR AND VENDEE—CONSTRUCTION OF CONTRACT—DESCRIPTION OF LAND.

Defendants contracted to convey "all that certain grist-mill and water-power known as the ' C. B. Knight Grist-Mill' property, including a tract of land with tenant-house at Round pond, and the outlet to said pond, together with all the rights and privileges to the water in Round pond that the late C. B. Knight possessed in his life-time, or belonging to said property. " C. B. Knight obtained the property by devise from his father, describing the land by metes and bounds, which included a strip adjacent to the pond, and near the lower part, and a mortgage on the property which was excepted from the covenants of the contract described the property in the same manner, and the strip was included in a map of the property given by defendant to the agent who made the sale, though the map was not shown to plaintiff. On the other hand, several witnesses testified that the mill property only included the land devised by C. B. Knight, and which was rented and used with the pond, but there was nothing to show that the purchaser had knowledge of such change. *Held,* that the strip should be included in the deed.

Appeal from special term, Orange county.

Action by P. Elbert Nostrand against Mary T. Knight and others to compel specific performance of a contract by defendants to convey to plaintiff's assignor "all that certain grist-mill and water-power known as the ' C. B. Knight Grist-Mill' property, including a tract of land with tenant-house at Round pond, and the outlet to said pond, together with all the rights and privileges to the water in Round pond that the late C. B. Knight possessed in his life-time, or belonging to said property." The defendants agreed to convey free from all incumbrances except a mortgage of $5,000 "now existing on said above described property." The deed as tendered, describing the land by metes and bounds, failed to include a strip of land adjacent to the pond, and near the lower part thereof. From an order of the special term finding that defendants had complied with their contract, and directing judgment against plaintiff for the purchase money, the latter appeals.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*B. F. Tracy,* for appellant. *M. N. Kane,* for Charles T. Knight. *E. A. Brewster,* for the other respondents.

BARNARD, P. J. The pleadings raise no question as to the binding force of the agreement upon all the parties. The signatures of the attorney by Philips & Wells were made by admitted authority, and to the charge that the defendants made the contract there is no denial, but an admission that Charles T. Knight, the attorney, had power to contract for all the other owners. The property intended is not certainly defined and described in the agreement. This description is a general one, as follows: "All that certain grist-mill and water-power, including a tract of land with tenant-house at Round pond, and the outlet to said pond, together with all the rights and privileges to the water in said pond that the late C. B. Knight possessed in his life-time, and belonging to said property. " It appears that there is a strip of land adjacent to the pond, and near the lower part of it, and the question is whether this strip, amounting in all to about seven acres, should be included in the deed. The title came to Charles B. Knight by devise from his father in 1862. The words of this devise are specific, and by metes and bounds described the beds around the pond, "including the grist-mill and saw-mill." After Charles B. Knight acquired title, he mortgaged the property by the same description. In 1882 the present owner took the property for sale in the hands of real-estate agents in New York at a fixed price, and a map was at the same time left with them, showing the property to include the land around the pond. This map was not shown to the plaintiff's assignor, so that he did not expressly contract with reference to it, but its importance remains as indicative that the property was what was known as the "mill-property and water-power" of the Knight family

at Monroe, Orange county. In 1887 the New York agents requested a revision of the price, and it was reduced to $10,000, but no indication was made that the property was changed so as to be different from the map. On the contrary, the subject of the contract was silently, at least, treated as the same as left for sale in 1882. The description in the bond and mortgage includes the saw and grist mill, and lands surrounding them. As against this evidence there is only the understanding of several witnesses that the mill property only included the part of the land devised by Charles B. Knight which was rented and used with the mill. The strip along-side the pond was separately rented. There is an absence of proof tending to bring home to the purchaser that there was any change in the land sold to make it different from the piece devised. The proof that, in dealing with the property, the owner had rented the mill and water-power separate from the land along the pond has little importance, and the belief and understanding of the people of the neighborhood that the mill and water-rights fill the description of the agreement has still less in view of the proof. The plaintiff acquired land and water manifestly as a mill privilege, and they agreed to sell this land and water-right without indicating any abatement. The land is a very beneficial aid to the water-right, both the upland and the lowland under water. There is no reason proven why both should be separated from the mill and water-rights. The judgment should therefore be reversed, and a new trial granted, costs to abide the event. All concur.